**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BANCREDITO HOLDING CORPORATION, on its own behalf and derivatively for the benefit of and on behalf of Nominal Defendant BANCREDITO INTERNATIONAL BANK & TRUST CORPORATION, | ) ) ) ) ) | **Case No. 23-cv-00575-M-BM** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| DRIVEN ADMINISTRATIVE SERVICES LLC, | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT** |
| Defendant, | ) ) ) | **DRIVEN ADMINISTRATIVE SERVICES, LLC'S MOTION TO DISMISS OR ALTERNATIVE** |
| and | ) ) | **MOTION TO TRANSFER VENUE** |
| BANCREDITO INTERNATIONAL BANK & TRUST CORPORATION, | ) ) ) | |
| Nominal Defendant. | ) ) | |

_____/

## <u>MEMORANDUM OF LAW</u>

Defendant, Driven Administrative Services LLC ("Driven"), submits this Memorandum of

Law in support of its Motion to Dismiss the Complaint filed against it by Plaintiff, Bancrédito

Holding Corporation ("Plaintiff"), pursuant to Rule 12 (b)(1), (2) and (3), Federal Rules of Civil

Procedure. This Court lacks subject-matter jurisdiction over this matter because the pertinent

agreement underlying Plaintiff's claims contains a mandatory forum-selection clause pursuant to

which any dispute arising thereunder must be filed before the Puerto Rico regulator. Moreover,

diversity of citizenship is lacking. This Court also lacks personal jurisdiction over Driven, a Puerto

Rican limited liability company that is not subject to either general or specific jurisdiction in this

forum. Finally, the Eastern District of North Carolina is an improper venue for this suit.

Accordingly, the Complaint should be dismissed or, in the alternative, transferred to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404.

## **Introduction**

Plaintiff, sole shareholder of a bank incorporated in Puerto Rico, brings direct and derivative claims for breach of fiduciary duties and professional negligence against Driven, a Puerto Rican company, arising from acts taken by Driven in Puerto Rico pursuant to an order entered in Puerto Rico by its Puerto Rican regulator appointing Driven as receiver to a failing Puerto Rican bank. Put simply, this case has no business being brought in a North Carolina court. First, the Settlement Agreement pursuant to which Plaintiff consented to Driven's designation as Receiver of the Puerto Rican bank contains a mandatory forum-selection provision, requiring that any dispute related to Driven's actions as receiver be filed before the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") and adjudicated under Puerto Rico law. Second, there is no diversity of citizenship because the Bank (which must be aligned as a plaintiff in this matter) and Driven both share Puerto Rican citizenship. Third, Driven is not subject to general personal jurisdiction in North Carolina as it does not have such continuous and systematic contacts with this state as to render it at home here. In fact, the only "contact" that Driven has in North Carolina is the fact that it obtained a Certificate of Authority in 2022 to be able to pay the state withholding taxes for a single employee who was working remotely from North Carolina (and whose duties have nothing whatsoever to do with the parties or the claims before the Court nor with Driven's services as receiver to the Bank). Finally, this district is an improper venue for this action, warranting dismissal or, alternatively, transfer to the United States District Court for the District of Puerto Rico.

2

## Factual Background[1]

Plaintiff is the sole shareholder of Bancrédito International Bank & Trust Corporation ("Bank"), a Puerto Rico corporation regulated and supervised by OCIF. Compl. (ECF No. 1) at ¶¶ 3, 9, 11-12. OCIF examined, among other things, the Bank's compliance with the applicable provisions of the Bank Secrecy Act, including anti-money laundering policies, procedures, and internal controls. *Id*. at ¶¶ 10-12. In November 2019, the Financial Crimes Enforcement Network of the U.S. Department of the Treasury ("FinCEN") commenced an investigation into the Bank's anti-money laundering compliance program, in which FinCEN reviewed documents and evidence obtained from OCIF's examinations. *Id*. at ¶ 75. In December 2021, the Bank and OCIF entered into a Memorandum of Understanding to address issues with the Bank's compliance with anti-money laundering protocols. *Id*. at ¶ 13. This Memorandum of Understanding required the Bank to organize a special committee of directors to oversee the Bank's compliance with regulations of the Bank Secrecy Act and to conduct independent audits of substantially all customers' transactions for the past five years. *Id*. at ¶¶ 13-14.

In August 2022, the Bank, Plaintiff, and OCIF voluntarily entered into a Liquidation Plan as part of a settlement related to the Bank's compliance with the Memorandum of Understanding. *Id*. at ¶ 22. The Liquidation Plan appointed Driven as administrator for the Bank during the liquidation process. *Id*. at ¶ 31. As administrator, Driven was responsible for paying and discharging the Bank's liabilities and obligations, including paying certain depositors the money they held in their accounts with the Bank within thirty days of the Liquidation Plan's effect. *Id*. at

---

[1] This statement of facts is derived from the factual allegations of the Complaint. Driven disputes the allegations. For purposes of this Motion, however, Driven points to the Complaint's own recitation of facts and events to show this Court's lack of jurisdiction over the subject-matter and why venue is improper.

¶¶ 31, 33, 35. According to the Complaint, Plaintiff contacted a Bank customer that had an account containing a large sum of money and asked this customer to transfer its funds to an account held by the Bank at a different financial institution in Puerto Rico. *Id.* at ¶¶ 36, 38. The customer allegedly agreed to do so but requested that the Bank return to it the remaining balance in the account as required under the Liquidation Plan. *Id.* at ¶ 38. Plaintiff claims that Driven (which was acting as the Bank's administrator at this time) failed to repay the customer in violation of and in breach of its fiduciary duties. *Id.* at ¶¶ 38-42.

On January 11, 2023, OCIF issued a Receivership Order, revoking the Bank's license to operate, placing the Bank into receivership, and designating Driven as Receiver. *Id.* at 2, ¶ 43. The Receivership Order provided Driven with "flexibility" and discretion in finalizing the Bank's liquidation, such as appointing agents to take any action "necessary and appropriate." *Id.* at ¶¶ 47-48, 51-53. Driven, as Receiver, "had the discretion to select an escrow agent and open an escrow account to hold and secure the Bank's funds, in connection with completing the liquidation process." *Id.* at ¶ 52. According to the Complaint, that discretion was subject to certain terms and conditions pursuant to a Settlement Agreement entered into in March 2023 among Plaintiff, the Bank, and OCIF to resolve certain aspects of the Receivership Order that Plaintiff was challenging through OCIF. *Id.* at ¶ 53. Plaintiff alleges that Driven breached its fiduciary duty and the Settlement Agreement by retaining an escrow agent that was not as reputable as a larger escrow agent and by not providing to Plaintiff sufficient information with respect to Driven's appointment of an escrow agent. *Id.* at ¶¶ 54-58. Plaintiff also alleges that Driven denied its request to review the Bank's books and records. *Id.* at ¶¶ 59-61, 64-72.

Meanwhile, FinCEN's investigation was ongoing. *Id.* at ¶ 75. As Receiver, Driven engaged in the negotiations with FinCEN on behalf of the Bank. *Id.* at ¶ 76. Plaintiff alleges that Driven

failed to include the Bank and Plaintiff in its discussions with FinCEN and that, had it been permitted to participate in the negotiations with FinCEN, it would have ensured a better outcome for the Bank and would have provided information that contradicted assertions contained in a Consent Order, issued by FinCEN on September 15, 2023, which imposed a $15 million civil money penalty against the Bank. *Id*. at ¶¶ 81, 83-88. Although Plaintiff admits that the Settlement Agreement Plaintiff signed granted the Receiver absolute discretion to negotiate the Consent Order, Plaintiff alleges that Driven breached its fiduciary duties to the Bank and to Plaintiff by agreeing to an "excessive fine" and by admitting to "inaccurate set of facts." *Id*. at ¶ 92.

Plaintiff filed this lawsuit in the United States District Court for the Eastern District of North Carolina, asserting direct and derivative claims against Driven for breach of fiduciary duty and professional negligence. *Id*. at ¶¶ 136-51. For the reasons set forth below, the Complaint should be dismissed for lack of subject-matter jurisdiction, lack of personal jurisdiction over Driven, and because it was filed in an improper venue. Alternatively, the case should be transferred where it belongs: Puerto Rico.

## LEGAL ARGUMENTS

I. **This Court Lacks Subject-Matter Jurisdiction Pursuant to the Settlement Agreement's Mandatory Choice of Forum Clause**

A. **The Settlement Agreement's Forum Selection Clause**

The Settlement Agreement signed by Plaintiff provides: "The Parties understand and agree that the Receivership Order as modified by this Settlement Agreement will be in full force and effect and that ***OCIF will retain exclusive jurisdiction as allowed by law to address any future controversies arising from or in connection with the Receivership Documents***." *See* Settlement Agreement, attached as Exhibit 2 to Ex. A (hereinafter "Ex. A-2"), § 11(c) (emphasis added).

5

"Receivership Documents" is defined under the Settlement Agreement as the Receivership Order, the Liquidation Plan, and the Settlement Agreement. *Id.*, Clause 1(b).

Plaintiff's claims clearly stem from the Receivership Documents, alleging the existence of a fiduciary relationship between Plaintiff and Driven based on the Receivership Order. *See* Compl. at ¶ 50. In addition, the Complaint alleges that Driven purportedly breached its fiduciary duties by selecting Apex Corporate Trustees (UK) Limited ("Apex") as its Escrow Agent, which selection allegedly resulted in a breach of the Settlement Agreement. *Id.* at ¶¶ 51-57. Likewise, the Complaint alleges that Driven breached its fiduciary duties by entering into the Consent Order with FinCEN, *id.* at ¶¶ 53-57, which also stemmed from the Settlement Agreement. *See* Ex. A-2 § 7 ("Receiver shall retain exclusive authority to negotiate, settle or reach any resolution on behalf of BIBTC with FinCEN or the USDOJ.").

Because all of Plaintiff's claims are predicated on the Receivership Documents, over which OCIF retained exclusive jurisdiction to oversee compliance and adjudicate prospective disputes, this Court lacks subject matter jurisdiction over this case.

**B.      The Forum Selection Clause is Mandatory**

A mandatory forum selection clause gives the designated forum **exclusive jurisdiction** over any dispute, whereas a permissive clause confers jurisdiction over the parties within the designated forum, but does not necessarily grant exclusive jurisdiction. *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008). A crucial distinction between a mandatory clause and a permissive clause "is whether the clause only mentions jurisdiction or specifically refers to venue." *Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*, No. Civ. 1:02CV00796, 2003 WL 151852, at *3-4 (M.D.N.C. Jan. 8, 2003). "When construing forum selection clauses, federal courts have found dispositive the particular language

of the clause and whether it authorizes another forum as an alternative to the forum of the litigation or whether it makes the designated forum **exclusive**." *Albermarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650-651 (4th Cir. 2010).

The Settlement Agreement clearly confers **exclusive jurisdiction** to OCIF in all matters relating to the Receivership Documents, rendering the forum-selection clause mandatory rather than permissive. *FindWhere Holdings, Inc., v. Systems Environmental Optimizations, LLC*, 626 F.3d 754 (4th Cir. 2010) (finding that the phrase "any dispute or legal action ... shall lie exclusively in" rendered the forum selection clause mandatory and excluded any other proper venues). Any other interpretation would render the forum-selection language of the Settlement Agreement meaningless. *See e.g. Davis Media Group v. Best Western Int'l, Inc.*, 302 F. Supp. 2d 464, 467 (D. Md. 2004) (holding that mandatory choice of forum clauses, like other express contractual provisions, should not be treated as meaningless).

## C.    The Forum Selection Clause is Enforceable

Contractual forum-selection provisions are presumptively valid, but this presumption may be overcome by a clear showing that the provision is unreasonable under the circumstances. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1974)). A forum-selection provision may be found unreasonable if:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Allen*, 94 F.3d at 928. None of those factors apply here.

First, the forum-selection clause was not induced by fraud or overreaching. Plaintiff does not allege as much and cannot do so, given that it predicates part of the causes of action on a

purported breach of such Settlement Agreement. Second, the forum-selection clause will not deprive Plaintiff of its day in court. In fact, Plaintiff has filed numerous prior actions relating to the Receivership Documents in Puerto Rico, including before OCIF and the Puerto Rico Court of Appeals, arising from similar allegations. Third, there is no fundamental unfairness of the chosen law that may deprive Plaintiff of a remedy, and the Complaint fails to allege as much. The Bank and its shareholder, Plaintiff, have been operating under and are very familiar with Puerto Rico laws, particularly with respect to financial services.

Finally, none of the orders or contracts at issue were entered into in North Carolina. All of the Receivership Documents, including the Settlement Agreement, were entered into in Puerto Rico, expressly provided that they were subject to Puerto Rico law, and relate exclusively to the liquidation of a bank in Puerto Rico, by a Receiver appointed by the Bank's regulator (OCIF) and whose Receiver does business exclusively in Puerto Rico. *See* N.C. Gen. Stat. § 22B-3 ("Except as otherwise provided in this section, **any provision in a contract entered into in North Carolina** that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.") (emphasis added).

Because the Settlement Agreement contains a mandatory and enforceable forum-selection provision pursuant to which OCIF retained exclusive jurisdiction over any dispute thereunder such as those object of the Complaint, dismissal of this action is warranted for lack of subject matter jurisdiction.

## II.    This Court Lacks Subject-Matter Jurisdiction Under 28 U.S.C. 1332 As There is No Diversity of Citizenship.

Federal courts are courts of limited jurisdiction. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Here, Plaintiffs seek to invoke subject-matter jurisdiction through

diversity of citizenship under 28 U.S.C. §1332(a). *See* Compl. at ¶ 5. But diversity jurisdiction exists only where the matter in controversy exceeds $75,000 and is between citizens of different States or countries. 28 U.S.C. §1332(a). The party seeking to invoke a federal court's limited jurisdiction bears the burden of proving that diversity of citizenship does in fact exist. *See Hardaway v. Checkers Drive-In Rests., Inc.*, 483 F. App'x 854, 854 (4th Cir. 2012). Plaintiff has failed to meet its burden here.

While Plaintiff alleges in the Complaint that it was incorporated in New York, *see* Compl. at ¶ 1, the Complaint is silent as to Plaintiff's principal place of business, another form of corporate citizenship. 28 U.S.C. §1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated ***and of the State or foreign state where it has its principal place of business*** . . . .") (emphasis added). In addition, while Plaintiff alleges that Driven is a limited liability company ("LLC") organized under the laws of Puerto Rico, the Plaintiff fails to identify the citizenship of Driven's members. *See Centr. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (explaining that, for purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of all of its members); *Qualtek Recovery Logistics LLC v. Poythress*, No. 1:22-CV-1006, 2022 WL 19335891, at *1 (M.D.N.C. Dec. 9, 2022) (noting that, by failing to allege the citizenship of any members of the LLC plaintiff or the LLC defendant, the plaintiff failed to meet its burden to establish subject-matter jurisdiction; ordering plaintiff to amend and re-plead sufficient facts to establish jurisdiction). As the Declaration of Ryan Marín, attached hereto as **Exhibit A**, establishes, Driven's sole member is another Puerto Rico LLC that, in turn, has five members, all of whom are residents of Puerto Rico. Ex. A at ¶¶ 4, 6-7. Thus, Driven is a "citizen" of Puerto Rico.

Accordingly, this Court should dismiss for lack of subject-matter jurisdiction because Plaintiff has failed to plead facts demonstrating diversity of citizenship between the parties.

But the inquiry does not end there, even assuming, for the sake of argument, that Plaintiff's principal place of business is in fact New York and not Puerto Rico (where it operated as the sole shareholder of the Bank). Plaintiff has asserted both direct and derivative claims on behalf of the Bank, an entity with Puerto Rican citizenship. The question then is whether the Bank, which is named in this case as a Nominal Defendant, is actually a plaintiff. Realignment of the Bank would destroy diversity.

It is well settled that "the parties' characterization of themselves or their claims is not determinative for federal jurisdiction purposes." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) (internal citations and quotation omitted). That is, "'[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.'" *Orahem-Chaharbakhshi v. LaRue*, No. 5:23-CV-257-D, 2023 WL 4843071, at *2–3 (E.D.N.C. July 28, 2023) (quoting *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69 (1941)). Rather, a federal court must "look beyond the pleadings[ ] and arrange the parties according to their sides in the dispute." *City of Indianapolis*, 314 U.S. at 69.

In a derivative suit, the corporation (*i.e.*, the Bank) is "initially named as a defendant to ensure its presence, after which it may be aligned according to its real interests." *Office of Strategic Services, Inc. v. Sadeghian*, 528 F. App'x 336, 349 (4th Cir. 2013); *Smith v. Sperling*, 354 U.S. 91, 97 (1957). "The question of whether to realign the corporation as a plaintiff is 'a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute.'" *Sadeghian*, 528 F. App'x at 349 (quoting *Smith v. Sperling*, 354 U.S. at 97). In *Sadeghian*, the

Fourth Circuit Court of Appeals adopted the reasoning of the Eleventh Circuit for determining when a corporation in a derivate suit should be aligned as a plaintiff or as a defendant:

> Thus, if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant. On the other hand, ***if the individual plaintiff is the majority stockholder or a controlling officer, then the corporation cannot be deemed antagonistic to the suit and it should be realigned as a plaintiff***.

*Sadeghian*, 528 F. App'x at 349 (quoting *Liddy v. Urbanek*, 707 F.2d 1222, 1224–25 (11th Cir. 1983) (internal quotations and citations omitted) (emphasis added).

Here, the Complaint alleges that "Plaintiff, the Bank's sole shareholder, brings this shareholder direct and derivative action to protect and preserve the Bank's value and reputation" and that both "the Bank and Plaintiff are faced with harm" as a consequence of Driven's actions. Compl. at 1, 2, ¶¶ 113, 115. In fact, Plaintiff refers to itself and the Bank interchangeably in the derivative claims asserted in the Complaint. *Id.* at ¶¶ 121-23, 126-29 (referring to Driven's fiduciary duties owed and allegedly breached to *Plaintiff* in Count One for Breach of Fiduciary Duty (Derivative)); ¶¶ 131-35 (referring to Driven's duty of care owed to *Plaintiff* in Count Two for Professional Negligence (Derivative)). As the Complaint's own allegations and claims establish, the Bank cannot be deemed antagonistic to the suit and should be realigned as a plaintiff. Because both the Bank and Driven are citizens of Puerto Rico, there is no diversity of citizenship, and this Court lacks subject-matter jurisdiction over the derivative claims. *Liddy*, 707 F.2d at 1225 (holding that corporation should have been realigned as a plaintiff in derivative action because plaintiff bringing derivative action was majority shareholder whose interests were aligned with corporation; remanding with instructions to dismiss for lack of subject-matter jurisdiction because no diversity of citizenship in light of re-alignment of corporation as a plaintiff); *see also Centr. W. Va. Energy Co., Inc.*, 636 F.3d at 103 ("Section 1332 requires complete diversity among parties,

meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant.") (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

## III. <u>The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.</u>

### A. Driven is not subject to either specific or general jurisdiction in North Carolina.

"A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Because the North Carolina long-arm statute "permits the exercise of personal jurisdiction to the outer limits allowable under federal due process," the determinative question is whether a plaintiff has shown that a defendant "had sufficient contacts with North Carolina to satisfy constitutional due process." *Id.* at 558–59; *see Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (N.C. 1977). Thus, the jurisdictional inquiry essentially collapses into the determination of whether and to what extent a non-resident defendant has sufficient minimum contacts with this State.

Minimum contacts may give rise to general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction requires that a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* Where a party is subject to general jurisdiction in the forum state, it can be sued for any cause of action, regardless whether the cause of action arose out of that party's activities within the state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

12

In contrast, specific jurisdiction over an out-of-state defendant is proper only if "the litigation results from the alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "[S]pecific jurisdiction requires 'demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there ***on a claim arising out of those contacts***' and is limited to claims that arise out of or related to those specific contacts with the forum." *W.M. Barr & Co., Inc. v. Dumond, Inc.*, No. 322CV00447FDWDCK, 2022 WL 17576338, at *3 (W.D.N.C. Dec. 9, 2022) (quoting *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018)) (emphasis added).

The Complaint contains a single conclusory allegation that Driven is subject to personal jurisdiction in North Carolina "because it has a registered agent in the State of North Carolina." Compl. at ¶ 6. As the attached Declaration establishes, Driven is based out of and operates exclusively in Puerto Rico. Ex. A at ¶¶ 4-5, 8-10. It has no offices, telephone numbers, or bank accounts in North Carolina. *Id*. at ¶¶ 5, 10, 26-27, 32. It has never owned or leased real property in North Carolina. *Id*. at ¶¶ 29-30. Its only connection to North Carolina is the fact that ***one*** out of its 180 employees works remotely from North Carolina. *Id*. at ¶¶ 9, 33. All of Driven's other employees reside and work from Puerto Rico. *Id*. at ¶ 9. Driven agreed to accommodate this one employee's particular situation but did not assist this employee in obtaining financing for a home in North Carolina or even arrange for this employee to have a telephone extension with a North Carolina telephone number. *Id*. at ¶¶ 32, 41. In order to comply with state tax regulations and pay this remote employee's withholding taxes, Driven applied for a certificate of authority with the North Carolina Department of the Secretary of State. *Id*. at ¶¶ 35-37. In doing so, Driven was obligated under North Carolina to appoint a registered agent. *See* N.C. Gen. Stat. § 55-15-03(a)(5).

As the application for the certificate of authority makes clear, however, Driven operates solely out of Puerto Rico. Ex. A at ¶¶ 4-5, 8-10, 35. Its clients are based out of Puerto Rico, and Driven does not market to or solicit clients in North Carolina. *Id*. at ¶¶ 26-27, 34.

Because none of the causes of action asserted in the Complaint arise out of any conduct that is connected in any way to Driven's single North Carolina employee, specific personal jurisdiction is inapplicable. Rather, Plaintiff's sole basis for contending that personal jurisdiction is proper over Driven is that Driven is registered to do business in North Carolina, *see* Compl. at ¶ 6, an assertion of general personal jurisdiction over Driven.

General jurisdiction, however, requires such continuous, systematic and *extensive* contacts in the forum state that the defendant is essentially "at home" in North Carolina. *Goodyear*, 564 U.S. at 919. *Goodyear* demonstrated a shift in the general personal jurisdiction jurisprudence, which was re-emphasized by the Court a few years later in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). In *Daimler*, the Court explained that "*Goodyear* made clear that only **a limited set of affiliations** with a forum will render a defendant amenable to all-purpose jurisdiction there," such as where a defendant corporation is incorporated or has its principal place of business. *Id*. at 137. The *Daimler* Court held that a defendant corporation cannot be subject to general personal jurisdiction wherever it engages in a substantial, continuous, and systematic course of business," describing that paradigm as "unacceptably grasping." *Id*. at 138. Instead, the inquiry should be "whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*. at 139 (quoting *Goodyear*). Thus, simply operating a business or having a subsidiary in the forum State is insufficient to subject a corporation to general personal jurisdiction if the defendant is not at "home" there. *Id*. at 139 n.20. ("A corporation that operates in many places can scarcely be deemed at home in all of them.

Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

Put simply, it is clear that general personal jurisdiction over a nonresident corporation is generally appropriate only where the corporation is incorporated or has its principal place of business. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (holding that registration to do business in a forum does not confer personal jurisdiction over an out-of-state corporation); *Rosenruist–Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 446 (4th Cir. 2007) (citing *Ratliff* for the proposition that "the designation of a statutory agent for service [is] insufficient to confer general jurisdiction over an out-of-state corporation"). As the Fourth Circuit explained, "[t]he principles of due process require a firmer foundation than mere compliance with state domestication statutes." *Ratliff*, 444 F.2d at 748. Only in an "exceptional case" will general jurisdiction over a nonresident corporation be available anywhere other than where the corporation is incorporated or has its principal place of business. *Daimler*, 571 U.S. at 139 n.19.

This is not such an "exceptional" case. Here, Driven conducts no business in North Carolina; does not market to or solicit clients in North Carolina; only one of its 180 employees works remotely from North Carolina; and the remote employee performs work for clients based in Puerto Rico. Driven does not come anywhere close to being "at home" in North Carolina.

The Fourth Circuit's decision in *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020), is instructive on this point. In *Fidrych*, a hotel guest sued Marriott in South Carolina for injuries suffered at a Marriott-affiliated hotel in Italy and claimed that Marriott was subject to general jurisdiction in South Carolina because Marriott had obtained a Certificate of Authority to conduct business in the state. *Id.* at 128, 134. Ninety Marriott-chain hotels were being operated in South Carolina, and Marriott had an interactive website accessible in South Carolina, which

15

included South Carolina in the drop-down menu used by customers when selecting their place of residence. *Id*. But the Fourth Circuit held that, "[w]hile these contacts certainly qualify as systematic and continuous, they are not substantial enough to 'render [Marriott] essentially at home in the forum State.'" *Id*. (quoting *Daimler*, 571 U.S. at 139). The court noted that Marriott's operations in South Carolina were extremely limited in scope, representing only a small fraction of the company's overall operations and that to accept the plaintiffs' jurisdictional arguments would mean that Marriott would be subject to general jurisdiction in any state in which Marriott was operating a hotel and conducting business, which the Fourth Circuited noted was "thus precisely the 'unacceptably grasping' argument rejected by the *Daimler* Court." *Id*.

Similarly, here, there is no basis upon which Driven can be considered to be "at home" in North Carolina simply because it obtained a Certificate of Authority to register to do business as a foreign entity for purposes of filing state withholding taxes on a single employee working remotely in North Carolina. Accordingly, this Court should dismiss the Complaint for lack of personal jurisdiction.

**B.    Driven did not consent to general jurisdiction in North Carolina simply by registering to do business there.**

To the extent that the Plaintiff contends that Driven consented to general jurisdiction in North Carolina simply by obtaining the Certificate of Authority and registering as a foreign entity, that does not square with the applicable precedent.

Some states have enacted statutes that specifically provide that registering to do business constitutes a consent to general jurisdiction in that state. In *Mallory v. Norfolk So. Railway Co.*, for instance, the Supreme Court held that the language of the Pennsylvania consent-to-jurisdiction statute was specific enough to advise foreign entities that registering to do business in Pennsylvania constituted a submission to the exercise of general personal jurisdiction over them.

16

600 U.S. 122, 134 (2023). The Pennsylvania consent-to-jurisdiction statute contained explicit language that "qualification as a foreign corporation under the laws of this Commonwealth" shall permit Pennsylvania state courts "to exercise general personal jurisdiction" over such registered foreign entity. 42 Pa. Cons. Stat. § 5301(a)(2)(i). **North Carolina has no such statute**.

Although *Fidrych* was decided before the Supreme Court decided *Mallory*, *Fidrych* specifically addressed the alternative argument that was at issue in *Mallory*: whether the non-resident defendant had consented to general jurisdiction by virtue of obtaining a Certificate of Authority to transact business in the forum state. 952 F.3d at 137. The Fourth Circuit analyzed the two cases on which *Mallory* was based and explained that "obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state ***only if that condition is explicit in the statute or the state courts have interpreted the statute as imposing that condition***." *Id*. (emphasis added). Neither condition is met here.

First, the North Carolina Supreme Court just recently **declined to** address the question whether registering to do business constituted a consent to general jurisdiction. *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 108, n.3 (2023) ("Note that we do not address the separate question of whether any Defendants have consented to jurisdiction in this case or whether registering to do business in North Carolina is a valid basis for personal jurisdiction under the Fourteenth Amendment.").

Second, neither North Carolina's long-arm statute nor its registration statute contains such "explicit" language that would indicate to a foreign entity that merely obtaining a Certificate of Authority to conduct business in the state will amount to consent to general jurisdiction. The relevant portion of the North Carolina long arm statute provides that personal jurisdiction can be exercised over a person under, *inter alia*, the following circumstances:

> (1) Local Presence or Status.--In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:
>
> * * *
>
> c.  Is a ***domestic*** corporation; or
>
> d.  Is ***engaged in substantial activity within this State***, whether such activity is wholly interstate, intrastate, or otherwise.

N.C. Gen. Stat. § 1-75.4(1) (emphasis added). North Carolina's registration statute similarly does not contain any express language extending personal jurisdiction over any entity registering to do business in that state. *See* N.C. Gen. Stat. § 55–15–05(b) ("[A] foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character."). Much more direct statutory language is required to establish that Driven somehow submitted itself to general jurisdiction in North Carolina by simply obtaining a Certificate of Authority. *Sebastian v. Davol, Inc.*, No. 517CV00006RLVDSC, 2017 WL 3325744, at *11 (W.D.N.C. Aug. 3, 2017) ("Without an indication that North Carolina statutorily requires a corporation to consent to general jurisdiction in order for that corporation to actually conduct business in North Carolina, this Court cannot find that Defendants consented to general jurisdiction in North Carolina."); *Pub. Impact, LLC v. Boston Consulting Grp., Inc.*, 117 F. Supp. 3d 732, 740 (M.D.N.C. 2015) (rejecting plaintiff's argument that defendant conceded to general jurisdiction in North Carolina by registering to do business in the state; noting that plaintiff's "suggested interpretation of North Carolina's registration statute is not immediately obvious from the face of the statute."); *Fidrych*, 952 F.3d at 137 (rejecting the argument that South Carolina's registration statutes [which are virtually identical to North Carolina's registration statutes] constituted a consent to general jurisdiction); *Ratliff*, 444 F.2d at 748 ("We think the

application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another. The principles of due process require a firmer foundation than mere compliance with state domestication statutes.") (internal citation omitted).

Driven is neither a domestic corporation nor engaged in substantial activity within North Carolina. And there is no North Carolina statute that expressly provides that merely registering to do business in North Carolina will subject that entity to general jurisdiction in the state. Accordingly, the Complaint must be dismissed for lack of personal jurisdiction over Driven.

**IV.** **The Complaint Should Be Dismissed for Improper Venue or, alternatively, Transferred to the District of Puerto Rico.**

**A.** **The Eastern District of North Carolina is an Improper Venue.**

Relying on 28 U.S.C. § 1391(b)(3), Plaintiff incorrectly asserts that venue is proper in the Eastern District of North Carolina. Compl. ¶ 7. Section 1391(b) provides three avenues for establishing proper venue. *See* 28 U.S.C. § 1391(b). First, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id*. § 1391(b)(1). For purposes of venue, a defendant-entity is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id*. § 1391(b)(2). Plaintiff relies upon the third avenue available under § 1391(b), which provides that "***if there is no district in which an action may otherwise be brought*** as provided in this section," then venue is proper in "any

Case 5:23-cv-00575-M-BM   Document 10   Filed 11/06/23   Page 19 of 27

judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id*. § 1391(b)(3) (emphasis added).

Venue is not proper in this district under any of these provisions. Section 1391(b)(1) is inapplicable because, as established in Section III above, Driven is not subject to personal jurisdiction in this district. Section 1391(b)(2) is inapplicable because the events or omissions giving rise to the claim took place in Puerto Rico—not within this district. Plaintiff's claims arise from the actions of a Puerto Rico-based LLC taken as Receiver to a bank in Puerto Rico pursuant to a receivership order issued in Puerto Rico by its Puerto Rico regulator, OCIF. Plaintiff's claims are wholly unrelated to the fact that Driven appointed a registered agent in North Carolina, which fact is insufficient to lay venue under section 1391(b)(2). *L&M Transp. Servs. V. McCurley*, No. 17-CV-503, 2018 WL 10323381, at *1 (E.D.N.C. Aug. 20, 2018) (concluding that defendant acting as plaintiff's agent within a district is insufficient to establish proper venue where all the events giving rise to the claim did not occur in or relate to the district); *Trudell Med. Int'l v. D R Burton Healthcare, LLC*, No. 18-CV-9, 2021 WL 3824679, at *4 (E.D.N.C. Aug. 25, 2021) (noting that the mere presence of a registered agent does not suggest that business in the state is extensive). Lastly, section 1391(b)(3) is inapplicable because the District of Puerto Rico is the proper venue under sections (b)(1) and (2), and thus this provision, which is used only as a last resort, is not triggered. *See L&M Transp. Servs.*, 2018 WL 10323381, at *1 (explaining that if venue is proper in another jurisdiction under sections (b)(1) and/or (b)(2), then section (b)(3) does not apply); *see also Gregory v. Harris*, No. 20-CV-84, 2020 WL 5948266, at *3 (E.D.N.C. Oct. 7, 2020); *Hubbard v. Eitan Grp. N. Am.*, No. 22-CV-382, 2023 WL 2959991, at *6 (E.D.N.C. Apr. 14, 2023). Even if section (b)(3) applied, it still provides no basis for laying venue in this District

because, as established above, Driven is not subject to this District's personal jurisdiction. *See* Section III, *supra*.

When a suit is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Gregory*, 2020 WL 5948266, at *3 (citing *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 56 (2013)) ("If the court determines a case does not fall within one of these three categories [under § 1391(b)], 'venue is improper, and the case must be dismissed or transferred under § 1406(a).'"). Because venue is improper in this District, the Court should dismiss Plaintiff's claims.

**B.      Alternatively, the Court should transfer this case to the District of Puerto Rico.**

Notwithstanding the foregoing, if the Court concludes that it has subject-matter jurisdiction over some or all of the claims and that venue is proper, the Court should exercise its broad discretion to transfer this suit to the United States District Court for the District of Puerto Rico. *See Smith v. Healthcare Fin. Servs.*, No. 17-CV-370, 2018 WL 405974, at *5 (E.D.N.C. Jan. 12, 2018) ("[A] district court has substantial discretion to decide whether to transfer venue."). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404.

When ruling on a motion to transfer, the inquiry is two-fold. *Trinh v. IBM*, No. 21-CV-105, 2022 WL 879680, at *3 (M.D.N.C. Mar. 2, 2022). First, courts consider "whether the plaintiff's claims might have been brought in the court where it is to be transferred." *Id.* Here, the District of Puerto Rico falls squarely within this requirement because venue would have been proper in the District of Puerto Rico and Driven is subject to the personal jurisdiction of the District of Puerto

Rico. *See id.* (explaining that "[t]he phrase 'where it might have been brought' in section 1404(a) refers to a forum where venue originally would have been proper for the claim and where a defendant originally would have been subject to personal jurisdiction"). Second, courts consider "whether the interests of justice and the convenience of the parties and witnesses justify transfer to that district." *Id.* Specifically, courts must consider the following factors: "(1) the weight accorded to plaintiffs' choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Smith*, 2018 WL 405974, at *5 (quoting *Tr. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)).

The deference that is generally conferred to a plaintiff's forum is diminished in situations such as this one where "plaintiff's choice of forum has little connection to the action." *See Trinh*, 2022 WL 879680, at *4. The second prong also weighs in favor of transfer because all of the conduct giving rise to Plaintiff's alleged injuries occurred in Puerto Rico. "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008). Plaintiff's claims center on Driven's role as Receiver of the Bank, a Puerto Rico entity, put into receivership by Puerto Rico's banking and financial services regulator, OCIF, pursuant to a Receivership Order that provides OCIF with exclusive jurisdiction over the Bank relating to the liquidation process "until such time that the OCIF has sufficient certainty that all of the necessary matters for finishing the Liquidation Plan and this receivership are completed. . . ." ECF No. 1-1.

The Complaint also alleges that Driven breached fiduciary duties owed to Plaintiff and to the Bank by failing to satisfactorily comply with some of the conditions of a Settlement Agreement

entered into between Plaintiff, the Bank, and OCIF. *See* Compl. ¶¶ 51-58. The Settlement Agreement contains a forum-selection clause in which the parties agreed that OCIF would continue to have jurisdiction to address any future controversies arising from any of the receivership documents. *See* Ex. A-2 at §1.b ("For the avoidance of doubt, OCIF will continue to have jurisdiction over [the Bank] and its affairs, until all matters contemplated in the Receivership Order, the Liquidation Plan and this [Settlement] Agreement have been fully satisfied."); § 11.c ("The Parties understand and agree that the Receivership Order as modified by this Settlement Agreement will be in full force and effect and that OCIF will retain exclusive jurisdiction as allowed by law to address any future controversies arising from or in connection with the Receivership Documents."). A forum-selection clause should be "a significant factor that figures centrally in the district court's calculus" as to whether to grant a motion to transfer under Section 1404(a). *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Because Plaintiff agreed in the Settlement Agreement that any "future controversies" arising from Driven's execution of its duties as receiver would be resolved in Puerto Rico, the Court should transfer the matter to the District of Puerto Rico.

Additional factors that support the transfer of this case to Puerto Rico include the fact that Driven conducted its receivership activities from Puerto Rico, where it engaged in discussions and negotiations with representatives from the Bank, Plaintiff, OCIF, and FinCEN. *See* Ex. A at ¶¶ 11-25. Driven's server containing electronic communications with the Bank, Plaintiff, OCIF, and FinCEN is located in Puerto Rico, as are all physical documents in Driven's custody and control. *Id*. at ¶¶ 15-16, 19-20, 22-23. In addition, the Bank stored boxes of documents in its office in Puerto Rico and/or in a storage facility in Puerto Rico. *Id*. at ¶ 16. Many of the relevant communications are in Spanish and would require translation. *Id*. at ¶¶ 16, 20, 23. The individuals

employed by Driven who were involved in or have any knowledge of actions taken by Driven as a receiver for the Bank are all located in Puerto Rico. *Id*. at ¶¶ 8-9, 13, 15, 19. None of the representatives of OCIF, a non-party, who were involved in Driven's appointment as receiver or have information as to suspicious transactions that led to the appointment of Driven as receiver for the Bank are located in North Carolina. *Id*. at ¶¶ 21-22. Other important non-party witnesses include the individual members of the Bank's Board of Directors, all but one of whom is located in Puerto Rico and none of whom are located in North Carolina. *Id*. at ¶ 49. Put simply, it is clear that pertinent witnesses and evidence reside within Puerto Rico—not this District.

As to the third factor, neither Driven nor Plaintiff reside in North Carolina. Driven resides in Puerto Rico and Plaintiff resides in New York but has significant operations in Puerto Rico where it operated the Bank as sole shareholder. *See* Compl. at 1-2, ¶¶ 1, 3-4, 9. Accordingly, the third factor also weighs in favor of transfer. Underlying the fourth factor is whether a particular forum may have an interest in deciding a case. *See Smith*, 2018 WL 405974, at *5 (explaining that the fourth factor weighs in favor of transfer where defendants are a resident of a different district and the conduct occurred within such district). Given that Plaintiff's claims concern a Puerto Rico defendant and conduct which allegedly occurred within Puerto Rico that affected a Puerto Rico-based bank, Puerto Rico is the only forum with an interest in deciding this suit and thus factor four weighs in favor of transfer.

Finally, because the allegations underlying Plaintiff's claims all occurred in or emanated from Puerto Rico, Puerto Rico law will apply to all of Plaintiff's tort claims. *See Gbye v. Gbye*, 130 N.C. App. 585, 585, 503 S.E. 2d 434, 434 (N.C. Ct. App. 1998) ("In actions arising in tort, the doctrine of *lex loci delicti* provides that the law of the state where the tort was allegedly committed controls the substantive issues of the case."); *Ada Liss Grp. V. Sara Lee Branded*

*Apparel*, No. 06-CV-129, 2006 WL 8438794, at *2 (E.D.N.C. June 28, 2006) (noting that courts consider "the avoidance of unnecessary problems with conflict of laws" when ruling on a motion to transfer venue).

Accordingly, if the Court chooses not to dismiss the case for improper venue, the Court should transfer this case to the District of Puerto Rico.

### Conclusion

For the reasons set forth above, the Court should dismiss both the direct and derivative claims asserted against Driven in the Complaint for breach of fiduciary duty and professional negligence pursuant to Rule 12 (b)(1), (2) and (3), Federal Rules of Civil Procedure. Alternatively, the Court should transfer this case to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404.

Dated:  November 6, 2023

Respectfully submitted,

By: */s/* Thomas R. Woodrow
  Thomas R. Woodrow
  HOLLAND & KNIGHT, LLP
  1120 S Tryon St., Suite 900
  Charlotte, NC 28203
  T: 980.215.7828
  F: 980.215.7771
  tom.woodrow@hklaw.com
  NC Bar No. 58622

  J. Raul Cosio (by special appearance, to be filed)
  Florida Bar No. 503630
  Rebecca M. Plasencia (by special appearance, to be filed)
  Florida Bar No. 861901
  HOLLAND & KNIGHT LLP
  701 Brickell Avenue, Ste 3300
  Miami, FL 33131
  T: 305.374.8500
  F: 305.789.7799
  raul.cosio@hklaw.com

25

rebecca.plasencia@hklaw.com

*Attorneys for Defendant Driven Administrative Services LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing document complies with the applicable page and word limitations set forth in Local Civil Rule 7.2(f)(1)-(3).  The number of words in the memorandum is 7,839.

/s/ Thomas R. Woodrow

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, a copy of the foregoing **Memorandum of Law in support of Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue or Alternative Motion to Transfer Venue** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically provide notice to and service upon the following:

> Elizabeth Ireland, Esq.
> Winston & Strawn LLP
> 300 South Tryon Street, 16th Floor
> Charlotte, NC 28202
> eireland@winston.com
>
> *Attorney for Plaintiff Bancredito Holding Corporation*

/s/ Thomas R. Woodrow