IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-cv-00575-M-BM

| | |
|---|---|
| BANCRÉDITO HOLDING CORPORATION, on its own behalf and derivatively for the benefit of and on behalf of Nominal Defendant BANCRÉDITO INTERNATIONAL BANK & TRUST CORPORATION,<br><br>                Plaintiff,<br><br>    vs.<br><br>DRIVEN ADMINISTRATIVE SERVICES LLC,<br><br>                Defendant,<br><br>    and<br><br>BANCRÉDITO INTERNATIONAL BANK & TRUST CORPORATION,<br><br>                Nominal Defendant. | **<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE</u>** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 1

STANDARD OF REVIEW .......................................................................................... 4

ARGUMENT ............................................................................................................... 5

I.    This Court Has Personal Jurisdiction Under *Mallory v. Norfolk* and *Espin v. Citibank* .... 5

II.   This Court Is the Proper Venue ....................................................................... 10

III.  The Court Should Deny Defendant's Request to Transfer Venue .................... 11

IV.   This Court Has Subject Matter Jurisdiction .................................................... 14

V.    The Forum Selection Clause Does Not Change the Result .............................. 18

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Sci. & Eng'g, Inc. v. Autoclear LLC*,
606 F. Supp. 2d 617 (E.D. Va. 2008) ....................................................................13

*Beckworth v. Bizier*,
No. 3:12-CV-512-MOC-DSC, 2012 WL 6727239 (W.D.N.C. Dec. 19, 2012) ....................16

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
596 U.S. 107 (2022)..................................................................................................16

*City of Arlington v. F.C.C.*,
569 U.S. 290 (2013)..................................................................................................19

*Collins v. Straight, Inc.*,
748 F.2d 916 (4th Cir. 1984) ...................................................................................12

*Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.*,
102 F.Supp.2d 673 (S.D. W. Va., 2000)..................................................................15

*DiBattista v. Greco*,
No. CV 20-590-RGA, 2021 WL 327399 (D. Del. Jan. 31, 2021) ....................16, 17

*dmarcian, Inc. v. dmarcian Eur. BV.*,
60 F.4th 119 (4th Cir. 2023) ......................................................................................4

*Espin v. Citibank N.A.*,
No. 5:22-CV-383-BO-RN, 2023 WL 6447231 (E.D.N.C. Sept. 29, 2023)..................... *passim*

*Evans v. B.F. Perkins Co.*,
166 F.3d 642 (4th Cir. 1999) ......................................................................................4

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ................................................................................9, 10

*Gabriel v. Preble*,
396 F.3d 10 (1st Cir. 2005)......................................................................................17

*Gratz v. Murchison*,
130 F. Supp. 709 (D. Del. 1955)..............................................................................17

*HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*,
No. 10-cv-1477, 2015 WL 4238193 (N.C. Super. July 14, 2015)...........................18

*Hickox v. R&G Grp. Int'l, Inc.*,
    161 N.C. App. 510 (2003) ...................................................................18

*Int'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945).........................................................................5

*Jarman v. Twiddy & Co. of Duck, Inc.*,
    889 S.E.2d 488 (N.C. Ct. App. 2023) ....................................................18

*LIOBMedia, LLC v. Dataflow/Alaska, Inc.*,
    No. 07-cv-355, 2007 WL 2109279 (E.D. Va. July 16, 2007)..............................18

*Lyng v. Payne*,
    476 U.S. 926 (1986).........................................................................19

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023)................................................................... *passim*

*Mitrano v. Hawes*,
    377 F.3d 402 (4th Cir. 2004) ............................................................4, 5

*Mullins v. Beatrice Pocahontas Co.*,
    489 F.2d 260 (4th Cir. 1974) ..............................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ................................................................4

*Penn. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*,
    243 U.S. 93, 37 S. Ct. 344, 61 L. Ed. 610 (1917)........................................5, 7

*PFZ Props., Inc. v. Dep't of Nat. & Env't Res.*,
    No. 08-cv-1379, 2008 WL 11503811 (D.P.R. Nov. 20, 2008)..............................19

*Phillips v. S. Gumpert Co.*,
    627 F. Supp. 725 (W.D.N.C. 1986) ....................................................11, 12

*Plunkett v. Poyner*,
    No. 08-60953-CIV, 2009 WL 5176542 (S.D. Fla. Dec. 22, 2009).........................17

*Ratliff v. Cooper Lab'ys, Inc.*,
    444 F.2d 745 (4th Cir. 1971) ................................................................9

*Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.*,
    933 F. Supp. 507 (M.D.N.C. 1986) ....................................................12, 13

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
    945 F.2d 765 (4th Cir. 1991) ................................................................4

Case 5:23-cv-00575-M-BM   Document 15   Filed 11/27/23   Page 4 of 29

*Roy v. Home Depot, U.S.A., Inc.*,
No. 7:17-CV-239-BO, 2018 WL 6588514 (E.D.N.C. July 20, 2018) ....................................11

*Schaeffer v. SingleCare Holdings, LLC*,
384 N.C. 102 (2023) ....................................................................................................................7

*Sines v. Kessler*,
No. 3:17-CV-00072, 2021 WL 2518224 (W.D. Va. June 18, 2021)..............................13, 14

*Suttle v. Reich Bros. Constr. Co.*,
333 U.S. 163 (1948)....................................................................................................................11

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
282 F. Supp. 3d 916 (E.D. Va. 2017) ........................................................................................4

*TC Invs., Corp. v. Becker*,
733 F. Supp. 2d 266 (D.P.R. 2010)............................................................................................16

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
967 F.2d 598 (D.C. Cir. 1992)....................................................................................................19

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015) ..............................................................................................12, 13

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ..................................................................................................4, 5

*Viropro, Inc. v. PricewaterhouseCoopers Advisory Servs. Sdn Bhd*,
No. 15CV6235 DLC, 2015 WL 5751367 (S.D.N.Y. Sept. 30, 2015) ....................................17

*Whitmire v. S. Farm Bureau Life Ins. Co.*,
No. 5:20-CV-00018-M, 2020 WL 9763067 (E.D.N.C. May 20, 2020) ..................................12

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................................14

28 U.S.C. § 1332(c)(1)....................................................................................................................15

28 U.S.C. § 1391(b)(1) ..............................................................................................................10, 11

28 U.S.C. § 1391(b)(3) ....................................................................................................................10

28 U.S.C. § 1391(c)(2).....................................................................................................................11

28 U.S.C. § 1391(c)(2).....................................................................................................................11

N.C. Gen. Stat. § 55-15-03(a) ..........................................................................................................7

Case 5:23-cv-00575-M-BM   Document 15   Filed 11/27/23   Page 5 of 29

P.R. Laws Ann. tit. 7, § 2001 (1985) ........................................................................19

P.R. Laws Ann. tit. 7, § 2003 (1999) ........................................................................19

P.R. Laws Ann. tit. 7, § 2007 (2013) ...................................................................19, 20

P.R. Laws Ann. tit. 7, § 2010(a)(3) (2003) ...............................................................19

P.R. Laws Ann. tit. 7, § 2013 (1985) ........................................................................19

P.R. Laws Ann. tit. 14, § 3563 (2009) ..................................................................19, 20

P.R. Laws Ann. tit. 14, § 3564 (2009) ..................................................................19, 20

P.R. Laws Ann. tit. 14, § 3567 (2009) ..................................................................19, 20

P.R. Laws Ann. tit. 14, § 3650 (2009) ..................................................................19, 20

Puerto Rico General Corporations Law of 2009 .........................................................20

**Other Authorities**

*Assurance*, DRIVEN ADVISORS, https://drivenadvisor1.wpengine.com/assurance/
    (last visited Nov. 20, 2023) ..............................................................................2

Fed. R. Civ. P. 12(b) .................................................................................................4

*North Carolina*, SEC'Y OF STATE,
    https://www.sosnc.gov/Guides/register_a_foreign_business#:~:text
    =An%20Entity%20Already%20registered%20in,its%20affairs%20in%20this
    %20state (last visited Nov. 14, 2023) ..................................................................8

*Puerto Rico's Financial Storm*, PUERTO RICAN CHRON. (Oct. 24, 2023),
    https://puertoricanchronicles.com/Puerto%20Rico/Ryan-Marin-From-Trusted-
    Banker-to-the-Eye-of-Puerto-Rico's-Financial-Storm; .........................................14

*Ryan Marin: Navigating Questions of Professionalism Amid Puerto Rico's
    Banking Crisis*, THE RICAN REV. (Nov. 2023),
    https://thericanreview.com/business/ryan-marin-navigating-questions-of-
    professionalism-amid-puerto-rico-banking-crisis ............................................14, 20

*Suspicious Transactions*, EL NUEVO DIA (Sept. 16, 2023),
    https://www.elnuevodia.com/english/news/story/bancredito-processed-
    hundreds-of-millions-of-dollars-in-suspicious-transactions/ ...............................14

## INTRODUCTION

The Eastern District of North Carolina is the appropriate place for this lawsuit. Plaintiff Bancrédito Holding Corporation ("BHC" or "Plaintiff")—the party with the right to select the forum—chose to file its direct and derivative lawsuit here based on the facts of its case against Defendant Driven Administrative Services LLC ("Driven" or "Defendant"). Most importantly, Defendant decided to avail itself of the laws of the State of North Carolina when it selected a registered agent here, and its argument conveniently ignores the recent case of *Espin v. Citibank N.A.*, No. 5:22-CV-383-BO-RN, 2023 WL 6447231 (E.D.N.C. Sept. 29, 2023) (holding that the presence of a registered agent is sufficient to establish personal jurisdiction in North Carolina).

In its Motion to Dismiss or Alternative Motion to Transfer Venue ("Motion" or "Mot."), Defendant argues that multiple reasons preclude this Court from keeping this case before it. But, along with omitting the key personal jurisdiction case, Defendant ignores the law establishing that venue is proper wherever a court has personal jurisdiction, misinterprets relevant law with respect to diversity of citizenship, and glosses over the facts showing this forum is more convenient for Plaintiff. The Motion also fails to recognize that the forum selection clause cannot govern this dispute. As set out more fully below, dismissal of the case is unwarranted.

To the extent that Defendant instead seeks to transfer this case to the District of Puerto Rico, the factors explained below show that this forum is the correct location to proceed. The Motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff, a New York corporation, is the sole shareholder of Bancrédito International Bank & Trust Corporation ( "Bank"). Compl. (ECF No. 1) ¶¶ 3, 9. The Bank is regulated, supervised, and examined by a regulator in Puerto Rico, the Office of the Commissioner of Financial

Institutions ("OCIF").  *Id.* ¶ 11.  In 2022, Plaintiff, the Bank, and OCIF entered into a voluntary liquidation and dissolution plan ("Liquidation Plan") that appointed Driven—a company operating "in Puerto Rico and abroad"—as administrator for the Bank during the liquidation process. *Assurance*, DRIVEN ADVISORS, https://drivenadvisor1.wpengine.com/assurance/ (last visited Nov. 20, 2023); Compl. ¶ 23.

As administrator, Driven was responsible for paying and discharging all liabilities and obligations of the Bank.  But as more fully detailed in the Complaint, Driven failed to adequately perform its duties.  This derogation of responsibility led the Bank to default on its obligations under the Liquidation Plan and increased tensions with the Bank's regulator.  Defendant's actions (or inactions) foreshadowed the disregard with which Defendant carried itself when it later negotiated (or failed to negotiate) the Consent Order.[1]  Compl. ¶¶ 36-42.

In 2023, OCIF issued the Receivership Order, which, among other things, placed the Bank into receivership and designated Driven as its receiver ("Receiver").  *Id.* ¶ 43.  The Receivership Order expressly indicates:

> [Defendant] will be in a position similar to the one that the management and directors of [the Bank] held prior to the receivership.  Therefore, ***the management and directors of [the Bank] are ordered to place the Receiver in control of the [B]ank*** so that the Receiver, advised by any professionals that it deems necessary, may complete the remaining processes to finalize the liquidation of [the Bank].

*Id.* ¶ 49 (emphasis added); *see also* Ex. A to Compl. at 6-7 [hereinafter "Receivership Or."].  The order clearly stated that "the Receiver will have a fiduciary duty both to [the Bank's] creditors as well as to the [Bank's] Shareholder"—that is, Plaintiff.  Receivership Or. at 8; *see also* Compl. ¶ 50.  In March 2023, certain disputes about the Receivership Order were resolved through an agreement among Plaintiff, the Bank, and OCIF (the "Settlement Agreement").

---

[1] Unless otherwise here defined, capitalized terms shall have the same meaning as that given in the Complaint.

The Receiver worked on the liquidation process, but it made numerous key decisions that led it to breach its fiduciary duty to Plaintiff. The Receiver shut Plaintiff out of the discussions with the Financial Crimes Enforcement Network ("FinCEN") to resolve a long-standing investigation—even though the investigation began long before the Receiver was appointed. *See* Compl. ¶ 75. The Receiver then agreed to a public consent order rife with inaccuracies, mischaracterizations, and exaggerations. *Id.* ¶¶ 58-61, 75-86. By failing to involve Plaintiff and incorporate its material information, the Receiver agreed to an excessive—and factually unsupported—fine against the Bank. *Id.* ¶¶ 87-92. The Receiver also failed to select a properly qualified escrow account to hold and secure the Bank's funds. *Id.* ¶ 52-58. And the Receiver repeatedly denied Plaintiff its right to inspect the Bank's books and records. *Id.* ¶ 109-10.

Defendant mischaracterizes the facts by declaring that the Receiver had "absolute" discretion to negotiate the September 15, 2023 Consent Order Imposing Civil Money Penalty (the "Consent Order") with FinCEN. *See* Mot. at 5. The Settlement Agreement did no such thing, and Plaintiff never alleged as much. *Compare id.*, *with* Compl. ¶¶ 52-53, 92. Instead, the Receiver's decision to exclude Plaintiff from the negotiations directly contradicted its fiduciary duties. Compl. ¶¶ 75-86.

In sum, Plaintiff was forced to bring this lawsuit to protect and preserve the Bank's value and reputation and its own equity position, which have been significantly damaged and jeopardized by the Receiver's breach of its fiduciary duties. As alleged in the Complaint, the Receiver has consistently acted *against* the best interests of the Bank's shareholder, to which it expressly owes fiduciary duties, and harmed the Bank by (i) selecting an unreputable escrow agent; (ii) refusing to give Plaintiff access to the critical information about the Bank's financial situation; (iii) excluding Plaintiff from its negotiations with FinCEN; (iv) publicly admitting to inaccurate and

unsupported assertions in the FinCEN order, thereby exposing the Bank to a plethora of possible liability; and (v) agreeing to pay FinCEN a $15 million civil money penalty, which is egregiously high when compared with the $97,000 imposed by OCIF for the same alleged conduct. *Id.*¶ 13.

Plaintiff elected to bring this lawsuit in the Eastern District of North Carolina—where Defendant chose to avail itself of this State's jurisdiction by selecting a registered agent—so its dispute may be adjudicated in a neutral, centralized forum. Plaintiff and its potential witnesses, including employees of FinCEN based in Virginia, will be traveling from several different states. North Carolina is more centralized than Puerto Rico, and it is a better and more convenient location for Plaintiff—whose choice of forum should be given the utmost weight.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b), the factual allegations of the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The plaintiff has the burden of proving subject matter jurisdiction, personal jurisdiction, and venue. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *dmarcian, Inc. v. dmarcian Eur. BV.*, 60 F.4th 119, 131 (4th Cir. 2023); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 925 (E.D. Va. 2017).

When ruling on a challenge to personal jurisdiction and venue, the Court need only determine whether Plaintiff made a prima facie showing. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). In deciding a dispute as to subject matter jurisdiction, the Court should "regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

4

The Court should "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *See UMG Recordings, Inc.*, 963 F.3d at 350; *Mitrano*, 377 F.3d at 405.

## ARGUMENT

**I.**     **This Court Has Personal Jurisdiction Under *Mallory v. Norfolk* and *Espin v. Citibank***

As Defendant admits, it chose to have a registered agent here and conduct business with this State. Mot. at 13. In arguing that this Court does not have personal jurisdiction, Defendant acknowledges—but does not properly interpret—the recent Supreme Court case of *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). Mot. at 16. And Defendant completely ignores a case from this Court interpreting *Mallory* and proving Plaintiff has personal jurisdiction here. *See Espin*, 2023 WL 6447231, at *2.

*Mallory* corrected a misunderstanding regarding jurisdiction among lower courts when it held that *International Shoe*—a case explaining the two concepts of specific and general jurisdiction—did ***not*** overrule *Pennsylvania Fire*. *Mallory*, 600 U.S. at 146; *see also Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 326 (1945). In *Mallory*, the Supreme Court relied on *Pennsylvania Fire* to conclude that a company that registered to do business in a state and established an office for receiving service of process would be subject to personal jurisdiction there. 600 U.S. at 134; *see also Penn. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 97, 37 S. Ct. 344, 346, 61 L. Ed. 610 (1917). As the Supreme Court put it, "[i]n reality, all *International Shoe* did" by holding that the Due Process Clause "tolerate[d] two (and only two) types of personal jurisdiction over a corporate defendant" was "stake out an *additional* road to jurisdiction over out-of-state corporations." *Mallory*, 600 U.S. at 137-38 (emphasis in original). Therefore, *International Shoe* did not foreclose the original road of personal jurisdiction that

*Pennsylvania Fire* paved: "an out-of-state corporation that *has* consented to in-state suits in order to do business in the forum is susceptible to suit there." *Id.* at 138 (emphasis in original).

Here, Defendant mischaracterizes Plaintiff's jurisdictional claim as one of general jurisdiction, *see* Mot. at 14, and further argues that neither specific nor general jurisdiction applies. *See id.* at 12-15. This argument not only misinterprets *Mallory*'s holding—which explains that there are avenues of personal jurisdiction beyond those in *International Shoe*—but also fails to acknowledge critical and controlling case law. Plaintiff's claim of personal jurisdiction is neither specific nor general: it is one of consent. Compl. ¶¶ 2, 6. Plaintiff is under no obligation to plead that Defendant has sufficient minimum contacts or a systematic and continuous presence in North Carolina. *See Mallory*, 600 U.S. at 138-39 (differentiating between the jurisdictional requirements imposed by *International Shoe* on corporations that had not consented to suit in the forum state and those imposed by *Pennsylvania* Fire on corporations that had given such consent). Rather, Plaintiff's only obligation is to plead that Defendant *consented* to North Carolina's personal jurisdiction. *Id.* at 138 ("*Pennsylvania Fire* held that an out-of-state corporation that *has* consented to in-state suits in order to do business in the forum is susceptible to suit there."). Plaintiff satisfied this burden when it pled in the Complaint that Defendant registered to do business and retained an agent to receive service of process here. Compl. ¶¶ 2, 6.

Defendant does not contest that it chose to have a registered agent in North Carolina, nor does it contest that it pays taxes in this State and employs an individual who works here. Mot. at 16. Defendant further admits it has a mailing address in North Carolina. Ex. A to Mot. at 31 [hereinafter "Marin Decl."]. And Defendant applied for a "Certificate of Authority for Limited Liability" with the Secretary of State here. *Id.* at 34. Instead, despite these facts, Defendant points to "recent[]" North Carolina Supreme Court case law declining to "address the question [of]

whether registering to do business constituted consent to . . . jurisdiction." Mot. at 17. For this proposition, Defendant relies on a footnote in *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 108, n.3 (2023). However, the *Schaeffer* court actually declined to determine "whether registering to do business in North Carolina is a valid basis for personal jurisdiction under the Fourteenth Amendment." *Id.* *Schaeffer* did not reach the issue of consent because the court found it had specific jurisdiction over the out-of-state corporate defendants, obviating the need for a general-jurisdiction analysis. *Id.* ("[W]e do not address the separate question of whether Defendants have consented to jurisdiction in this case or whether registering to do business in North Carolina is a valid basis for personal jurisdiction . . . ."). And *Schaeffer* is not applicable because two months later, the United States Supreme Court decided *Mallory*, which unequivocally upheld the constitutionality of a state's consent-to-jurisdiction statute. 600 U.S. at 146.

Defendant next argues that even though it obtained a certificate of authority from North Carolina's Secretary of State and appointed a registered agent under North Carolina General Statutes Section 55-15-03(a), Defendant has not consented to jurisdiction here because the language of North Carolina's registration statute does not extend personal jurisdiction over registered entities as the Pennsylvania statute in *Mallory* did. Mot. at 18-19. For support, Defendant relies on a handful of pre-*Mallory* cases from *other* courts and ignores the post-*Mallory* decision of *Espin*, 2023 WL 6447231, in which *this* Court interpreted North Carolina's statute in accordance with *Mallory* and *Pennsylvania Fire* decisions and ultimately held that foreign corporations who register to do business in this State consent to its personal jurisdiction. *Id.* at *4. In deciding *Espin*, this Court also found that exercising personal jurisdiction over foreign corporations is constitutionally proper when said corporation "took steps that, under the express terms ***or previous authoritative construction of state law***, were understood as consent to the

State's jurisdiction on all claims." *Id.* at *3 (emphasis added) (citing *Mallory*, 600 U.S. at 152 (Alito, J., concurring in part and concurring in the judgment)).

Here, Defendant does not and cannot dispute that it took the requisite steps when it "filed paperwork with" North Carolina, "seeking the right to do business" here. Mot. at 13. Defendant admits that it filed a certificate of authority in this State in order to avail itself of this State's tax laws. *Id.* The North Carolina Secretary of State defines a certificate of authority as a "legal authorization which a foreign entity must obtain in order to be able ***to conduct its affairs in this state***." *Register a Foreign Business in North Carolina*, SEC'Y OF STATE, https://www.sosnc.gov/Guides/register_a_foreign_business#:~:text =An%20Entity%20Already%20registered%20in,its%20affairs%20in%20this%20state (last visited Nov. 14, 2023) (emphasis added). Regardless of those admissions, it does not matter whether Defendant actually conducts business in North Carolina. "[A] company is subject to suit on any claim in a forum State only because of its decision to file a piece of paper there," even if the document granting it the authority to conduct business in the forum "only sits collecting dust on an office shelf for years thereafter." *Mallory*, 600 U.S. at 145 (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 924 (2011)).

Defendant, nevertheless, attempts to distinguish this case from *Mallory* by arguing that North Carolina's registration statute differs from those of other states that enacted statutes expressly stating that registering to do business constitutes consent to personal jurisdiction. Mot. at 16-17; *Mallory*, 600 U.S. at 134 (noting that Pennsylvania's consent-to-jurisdiction statute permits Pennsylvania state courts to "exercise general personal jurisdiction" over registered foreign entities). *Espin* acknowledged the lack of "express terms" in North Carolina's registration statute but still found support for its holding in "previous authoritative construction of state law."

2023 WL 6447231, at *3-4 (citing *Oliver v. U.S. Fid. & Guar. Co.*, 174 N.C. 417 (1917) (holding that "when a state, by its statutes, has established and provided a method of personal service of process on foreign corporations doing business therein," the foreign corporations "are taken to have accepted as valid the statutory method provided, and such a service will be held to confer jurisdiction" (first citing *Steele v. W. Union Tel. Co.*, 206 N.C. 220 (1934) (finding personal jurisdiction over foreign corporations present in the state via its local agents); and then citing *Babb v. Cordell Indus., Inc.*, 242 N.C. 286, 288 (1955) (holding that "to bring the foreign corporation into court the service of process must be made upon an officer or agent as defined in G.S. s 1-97, and in the following cases only: (1) Where it has property in this State; or (2) where the cause of action arose in this State; or (3) where the service can be made personally upon some officer designated in G.S. s 1-97")))).

Without addressing *Espin* and this authoritative North Carolina Supreme Court case law, Defendant relies on two pre-*Espin* cases: *Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971), and *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020). Both are outdated and do not apply. First, Defendant cites *Ratliff* for the proposition that designating a statutory agent for service is insufficient to confer personal jurisdiction over an out-of-state corporation. Mot. at 15. In addition to predating *Espin* by over 50 years, *Ratliff* is irrelevant because it concerned a South Carolina court's personal jurisdiction. 444 F.2d at 748. Second, Defendant cites *Fidrych*, which concerned a South Carolina court's personal jurisdiction over an out-of-state corporation, to argue that obtaining the necessary certification to conduct business in a given state amounts to consent to personal jurisdiction only if that condition is explicit in the statute or in opinions by the state courts that have interpreted the statute. Mot. at 17. But *Fidrych* explicitly acknowledges that "we find it difficult to reconcile the *Pennsylvania Fire* approach with the

modern view of general jurisdiction expressed in this Supreme Court's recent case." *Fidrych*, 952 F.3d at 136. That is precisely what *Mallory* just did. *Mallory*, 600 U.S. at 134.

Defendant's arguments attempt to manipulate the law by hand-picking supportive excerpts from case law predating *Mallory* and ignoring that this Court already decided the same personal jurisdiction issue. Defendant's desired result is untenable. Instead, a corporation that registers to do business in North Carolina, as Defendant has, consents to this Court's personal jurisdiction.

## II.    This Court Is the Proper Venue

Defendant contests venue jurisdiction under either 28 U.S.C. § 1391(b)(1) or § 1391(b)(3), essentially arguing that venue is improper for both because "Driven is not subject to personal jurisdiction in this district." Mot. at 20. But as discussed above, this assertion fails to acknowledge recent personal jurisdiction jurisprudence; it also ignores precedential decisions about venue.

Section 1391(b)(3) allows venue jurisdiction in "any judicial district in which [the] defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3). Defendant argues that venue is improper in this District because it alleges this Court lacks personal jurisdiction. Mot. at 20. Yet as discussed above, this Court gained personal jurisdiction over Defendant when it registered to do business here, in turn bestowing upon this District the requisite venue jurisdiction. *See supra* Part I; *see also* 28 U.S.C. § 1391(b)(3).

Alternatively, Defendant argues that venue is improper under § 1391(b)(3) because this section of "last resort" "is not triggered" where other districts would have venue under § 1391(b)(1) or (2). Mot. at 20. According to Defendant, the District of Puerto Rico has venue under § 1391(b)(1) or (2), so Plaintiff cannot assert jurisdiction in North Carolina under § 1391(b)(3). *Id.* But here, Puerto Rico is not the only proper district under § 1391(b)(1). That section allows for venue in the "judicial district in which [the] defendant resides." 28 U.S.C. § 1391(b)(1). "[A]n entity with the capacity to sue and be sued," such as Defendant, is "deemed

to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction . . . ." *Id.* § 1391(c)(2); *see also Roy v. Home Depot, U.S.A., Inc.*, No. 7:17-CV-239-BO, 2018 WL 6588514, at *1 (E.D.N.C. July 20, 2018) ("For purposes of determining venue, a defendant corporation shall be deemed to reside in any judicial district in which that defendant is subject to the court's personal jurisdiction . . . ."). Since this Court has personal jurisdiction over Defendant, Defendant is held to "reside" here, and venue is proper under § 1391(b)(1). *See* 28 U.S.C. §§ 1391(b)(1), (c)(2); *see also supra* Part I.

Moreover, even setting the recent personal jurisdiction case law aside, venue is still proper here based on a 1948 Supreme Court decision, which interpreted an entity's "residence" to be in the district where it has a registered agent:

> Congress has revealed a similar understanding of the term "residence" when enacting special venue statutes in situations in which it was intended that, at the election of the plaintiff, a corporation should become amenable to suit either in the State of incorporation or in States in which it is carrying on corporate activities. In those statutes, ***Congress has provided that the venue of such suits should be located*** not only in the district in which the corporation is a "resident" or an "inhabitant," but also ***in districts in which it may be "found," "transacts business," or*** ***or has an agent to receive service of process***.

*Suttle v. Reich Bros. Constr. Co.*, 333 U.S. 163, 167 (1948) (emphases added). This case has not been abrogated or called into question in North Carolina. Given Defendant does not dispute that it has a registered agent in this State, Mot. at 13, which is located in Raleigh, venue is proper here.

### III.    The Court Should Deny Defendant's Request to Transfer Venue

To the extent Defendant seeks transfer of this case to federal court in Puerto Rico in lieu of dismissal, that request is legally unsupported. "Defendant carries a particularly heavy burden when it moves pursuant to § 1404(a) to transfer an action from a district where venue is proper." *Phillips v. S. Gumpert Co.*, 627 F. Supp. 725, 726-27 (W.D.N.C. 1986). Defendant essentially

argues that transfer is proper because Defendant resides in Puerto Rico, some witnesses are in Puerto Rico, and the acts giving rise to the suit occurred in Puerto Rico. Mot. at 24. This argument falls short of meeting Defendant's heavy burden.

"District courts within the Fourth Circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436 (4th Cir. 2015) (citing 28 U.S.C.A. § 1404(a)). These factors weigh against transfer.

First, and most importantly here, a plaintiff's choice of forum "should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). This choice is given considerable weight, and this Court applies a presumption in favor of maintaining suit in the plaintiff's elected forum. *Whitmire v. S. Farm Bureau Life Ins. Co.*, No. 5:20-CV-00018-M, 2020 WL 9763067, at *2 (E.D.N.C. May 20, 2020) (Myers, J.).[2] "If a transfer would merely shift the inconvenience from the Defendant to the Plaintiff, or if the equities lean but slightly in favor of the Defendant after all factors are considered, the Court should not disturb the Plaintiff's choice of forum." *Phillips*, 627 F. Supp. at 727; *see also Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.*, 933 F. Supp. 507, 513 (M.D.N.C. 1986) (denying defendant's motion to transfer simply because defendant's witnesses and evidence were located in a different district); *Whitmire*, 2020 WL 9763067, at *5.

Here, Defendant argues that Plaintiff's choice of forum is inconvenient because Defendant and its witnesses are located in Puerto Rico. Mot. at 23-24; *see also* Marin Decl. ¶¶ 46-50. That may be. But Puerto Rico is not convenient for Plaintiff or its witnesses. North Carolina is an

---

[2] Plaintiff acknowledges that *Whitmire* lists additional factors to consider when deciding a motion to transfer venue. However, because Defendant only lists four in its Motion, Plaintiff only addresses those four in this briefing. *See* Mot. at 22. Plaintiff can provide additional briefing as to all the factors, if desired.

appropriate central location that would easily accommodate individuals traveling from all directions. Plaintiff's owner and representative, Julio Herrera Velutini, resides in London, England. Proceeding in North Carolina would only require Mr. Velutini to make an eight-hour flight, whereas a flight to Puerto Rico can take up to 20 hours—more than double the time that it would take to arrive at North Carolina. The Chief Executive Officer of BHC lives in Florida. *See* Ex. A ¶¶ 2, 7 [hereinafter "Zapata Decl."]. Although determining all the witnesses is premature at this stage, Plaintiff anticipates calling witnesses from all over the country, including New York and Florida. *Id.* ¶ 11. FinCEN, whose civil penalty is at the center of this dispute, is headquartered in Virginia. *Id.* ¶ 20. Its representatives—who are likely witnesses in this case—would be more inconvenienced by having this suit proceed in Puerto Rico, which is over 1,500 miles away from Virginia, as opposed to the 150 or so miles between Virginia and North Carolina. *Id.* ¶ 20. The evidence that Plaintiff would likely use is located in mainland United States. *See id.* ¶¶ 13-20. Defendant also admits that some relevant parties are in Washington, D.C. *See* Marin Decl. ¶ 24. Thus, transferring this suit to Puerto Rico would impermissibly shift the inconvenience onto Plaintiff or other witnesses, and Defendant "has not met its burden of showing why [Plaintiff's] choice of this forum should be disturbed." *Regent Lighting*, 933 F. Supp. at 513.

Additionally, the "interest of justice" weighs against transfer. *Plumbing Servs., Inc.*, 791 F.3d at 444. First, not *all* of the events giving rise to this suit occurred in Puerto Rico as Defendant alleges. For example, and as discussed above, Defendant's negotiations with FinCEN—a Virginia-based regulatory agency—are at the center of this ligation. Second, Plaintiff asserted its right to a jury trial, and the jury should be independent and unbiased. *Am. Sci. & Eng'g, Inc. v. Autoclear LLC*, 606 F. Supp. 2d 617, 625 (E.D. Va. 2008). Courts in this District have considered the effect of trial publicity when evaluating this factor. In *Sines v. Kessler*, defendants moved to transfer

venue because of the possible trial publicity that could ensue in the forum state. *See Sines v. Kessler*, No. 3:17-CV-00072, 2021 WL 2518224, at *4 (W.D. Va. June 18, 2021). Publicity poses a concern here too. If this case proceeds in Puerto Rico, a small community with an influential media presence, press coverage will likely prejudice its ability to obtain an unbiased adjudicator. Puerto Rican news outlets covered the events surrounding Bancrédito's receivership and FinCEN's civil money penalty before this suit began. *See, e.g.*, Efrain Montalban Rios, *Bancrédito Processes Hundreds of Millions of Dollars in Suspicious Transactions*, EL NUEVO DIA (Sept. 16, 2023), https://www.elnuevodia.com/english/news/story/bancredito-processed-hundreds-of-millions-of-dollars-in-suspicious-transactions/. Even Defendant's Managing Shareholder Ryan Marin has fallen prey to Puerto Rico's media scrutiny. *See Ryan Marin: From Trusted Banker to the Eye of Puerto Rico's Financial Storm*, PUERTO RICAN CHRON. (Oct. 24, 2023), https://puertoricanchronicles.com/Puerto%20Rico/Ryan-Marin-From-Trusted-Banker-to-the-Eye-of-Puerto-Rico's-Financial-Storm; *Ryan Marin: Navigating Questions of Professionalism Amid Puerto Rico's Banking Crisis*, THE RICAN REV. (Nov. 2023), https://thericanreview.com/business/ryan-marin-navigating-questions-of-professionalism-amid-puerto-rico-banking-crisis (noting that "90% of Marin's income relies on government contracts for receiverships, sparking doubts about his commitment to resolving the crisis versus his firm's financial interests"). The likely impact of the media and prejudice it will cause are reasons enough to allow this suit to proceed in the location Plaintiff has selected.

Because Defendant has failed to overcome the presumption that Plaintiff's choice of forum should not be disturbed, this action should remain in the Eastern District of North Carolina.

## IV. <u>This Court Has Subject Matter Jurisdiction</u>

Lastly, this case should proceed here because the Court has subject matter jurisdiction through diversity of citizenship under 28 U.S.C. § 1332(a). *See* Compl. ¶ 5. Defendant does not

dispute that the matter in controversy exceeds $75,000, nor does Defendant contest that Plaintiff is a New York corporation. Instead, Defendant claims that Plaintiff failed to plead diversity of citizenship because Plaintiff did not allege its principal place of business in the Complaint. Mot. at 9. To support its claim, Defendant only cites 28 U.S.C. § 1332(c)(1). *Id.* Plaintiff is under no obligation to allege its principal place of business, and Defendant cites no authority to the contrary. But even if Plaintiff were required to do so, that would not impact the analysis because Plaintiff's principal place of business is Florida. *See Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc.*, 102 F.Supp.2d 673,676 (S.D. W. Va., 2000) (applying the "nerve center" test to determine the principal place of business of a holding company); *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir. 1974) (explaining that the "nerve center" test makes the "place where the corporation's officers direct, control, and coordinate its activities, determinative").

Plaintiff here is not geographically bound to any one location. It has three directors—one in the United Kingdom and two in Florida. Zapata Decl. ¶¶ 7-9. Meetings of the Board take place virtually. *Id.* ¶ 10. Plaintiff has no directors in Puerto Rico and does not conduct business there. *Id.* ¶¶ 13-20. Defendant alleges no contradicting facts. *See generally* Mot. Plaintiff's "nerve center" is Florida—the state where the majority of its directors are based. Since neither Defendant nor the Bank are Florida citizens, knowing the principal place of business does not destroy diversity of citizenship. Defendant's argument on this point is inconsequential.

Defendant also argues that Plaintiff failed to establish subject matter jurisdiction because the Complaint did not identify the citizenship of *Defendant*'s members. *Id.* at 9. Yet Defendant admits that it is a citizen of Puerto Rico because its sole member is another Puerto Rico limited liability company that has five members, all of whom are residents of Puerto Rico. *Id.*; Marin Decl. at 1-2. Even assuming that Plaintiff is required to identify the citizenship of each member

of a limited liability company, the end result is the same: Defendant is a citizen of Puerto Rico, Plaintiff is not, and diversity of citizenship is met.

Extending the argument further, Defendant contends that even if diversity jurisdiction *currently* exists, the Bank (a Puerto Rico corporation), which is named in the Complaint as a nominal defendant, should be moved to Plaintiff's side of the "v," leaving Defendant (a Puerto Rico corporation) on its own. Mot. at 10-12. This "realignment" is justified according to Defendant, because when plaintiff in a shareholder derivative action is the sole shareholder of the corporation, the requisite antagonism between the shareholder and corporation does not exist and the parties must be realigned. *Id.* at 11. But that analysis presupposes the typical situation in which the sole shareholder controls the company.[3] As discussed above, that is decidedly not the case here, where *the Receiver* undisputedly controlled the Bank at all relevant times. *See, e.g.*, Receivership Or. at 6-7 ("[T]he Receiver will be in a position similar to the one that the management and directors of [the Bank] held prior to the receivership."); Mot. at 5 (asserting that Defendant has "absolute discretion" to negotiate the Consent Order).

Plaintiff does not dispute that "[t]ypically, because a derivative suit is asserted by a stockholder on behalf of a corporation, the corporation would be aligned as a plaintiff in the suit, as the corporation 'is the real party in interest.'" *DiBattista v. Greco*, No. CV 20-590-RGA, 2021

---

[3] Defendant cites North Carolina case law to support this argument; but its reliance on North Carolina jurisprudence is misguided because choice-of-law principles dictate that Puerto Rico law (which follows Delaware on the relevant issues) controls the question of realignment. "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under North Carolina's (and virtually every other state's) choice-of-law rules, the substantive law of a corporation's state of incorporation "governs suits involving the corporation's internal affairs" or corporate governance. *Beckworth v. Bizier*, No. 3:12-CV-512-MOC-DSC, 2012 WL 6727239, at *4 (W.D.N.C. Dec. 19, 2012) (quoting *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680-81, 657 S.E.2d 55, 63 (2008)). Since the corporation here at issue is the Bank, which is incorporated in Puerto Rico, Puerto Rico law governs this suit about the Bank's internal affairs. Moreover, "because Puerto Rico corporate law was modeled after Delaware corporate law," Puerto Rico courts often look to Delaware law in suits regarding the internal affairs of Puerto Rico corporations. *TC Invs., Corp. v. Becker*, 733 F. Supp. 2d 266, 282 (D.P.R. 2010). To the extent that Defendant argues this case should proceed in Puerto Rico because its law applies, Plaintiff notes that a North Carolina federal court can properly (and neutrally) interpret both Puerto Rico and Delaware law.

WL 327399, at *7 (D. Del. Jan. 31, 2021) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522-23 (1947)). But "[w]here the corporation is antagonistic or adverse to the suit, the ordinary presumption bursts, and then the corporation should instead be aligned as a defendant; this is because in such a case, the plaintiff and the corporation are, in reality, on opposite sides of the controversy." *Id.* at *8.

Here, the Receiver—not the sole shareholder—controlled the Bank. Compl. ¶¶ 49-92, 109-111; *see also* Receivership Or. at 6-7. Therefore, the Receiver takes the position of the "controlling officer" of the Bank and the Bank is properly considered antagonistic to the Plaintiff shareholder. *See Viropro, Inc. v. PricewaterhouseCoopers Advisory Servs. Sdn Bhd*, No. 15CV6235 DLC, 2015 WL 5751367, at *1 (S.D.N.Y. Sept. 30, 2015) (realigning parties because the fact that defendant is "a receiver . . . does not negate that it presently asserts complete control over Alpha" such that "the corporation has become through its managers hostile" and "its interests are effectively aligned" with the defendant-receiver). In this situation, precedent dictates that the Bank is properly on the defendant's side. *See, e.g.*, *Gratz v. Murchison*, 130 F. Supp. 709, 712 (D. Del. 1955) ("Under particular facts a federal court may re-align parties to reflect their actual interest. The paper record here indicates Taylor Company is controlled by the individual defendants, whose interests, it is alleged, are hostile to Taylor Company and plaintiff. A controlled corporation on whose behalf a derivative action is brought is properly joined as defendant and cannot be realigned as a plaintiff."); *Gabriel v. Preble*, 396 F.3d 10, 14 (1st Cir. 2005) (concluding that aligning a corporation as a defendant was appropriate where the plaintiff did not ask the defendant officers/board members to take ameliorative action before filing suit because such a demand would be futile, and because the board-of-director defendants "fought the suit tooth and nail"); *see also* *Plunkett v. Poyner*, No. 08-60953-CIV, 2009 WL 5176542, at *3 (S.D. Fla. Dec. 22, 2009) ("[T]he

17

Court is satisfied that for purposes of deciding diversity jurisdiction, the Company, alleged to be controlled by Defendants, is antagonistic to the interests of Plaintiff and the other shareholders. The Complaint is replete with allegations of fraud and malfeasance perpetrated by the Defendants based on their control over the Company and its operations."). Consequently, despite Defendant's creative arguments, while the Bank is a controlled corporation, it is controlled by Defendant, not the shareholder. The Bank, was thus properly situated as a nominal defendant, and diversity of citizenship is satisfied.[4]

## V.     The Forum Selection Clause Does Not Change the Result

Defendant additionally argues that this entire dispute should proceed before OCIF instead of a federal court, citing the forum selection clause in the Settlement Agreement. Mot. at 5-8; *see also* Ex. A-2 to Mot. § 11(c) [hereinafter "Settlement Agreement"]. But as Defendant rightly acknowledges, a forum selection clause is not without its limits. *See* Mot. at 6-7 (noting that the power of a forum selection clause is limited by its language); *see also, e.g.*, *Jarman v. Twiddy & Co. of Duck, Inc.*, 889 S.E.2d 488, 499 (N.C. Ct. App. 2023) (declining to enforce a forum selection clause because "the [c]omplaint include[d] no claim or allegation whatsoever arising out of the Vacation Rental Agreement itself" since it was "grounded in claims of negligence"); *Hickox v. R&G Grp. Int'l, Inc.*, 161 N.C. App. 510, 513 (2003) (declining to enforce a forum selection clause at issue because the "dispute [is] over the performance of the contract not . . . over orders or commissions arising under the contract"); *LIOBMedia, LLC v. Dataflow/Alaska, Inc.*, No. 07-cv-355, 2007 WL 2109279, at *4 (E.D. Va. July 16, 2007) ("[B]ecause the claims do not arise under

---

[4] Defendant's argument for "realignment" because of Plaintiff's allegations that Defendant's conduct harmed the Bank is a red herring. Harm to the corporation is the very essence of derivative harm—in every derivative suit—regardless of whether or not it is a controlled company or by whom. *See, e.g.*, *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, No. 10-cv-1447, 2015 WL 4238193, at *17 (N.C. Super. July 14, 2015) (holding that claims deriving from harm to the company are derivative claims). In any event, it is premature for Defendant to raise the issue of "realignment" while contesting jurisdiction and not in the 12(b)(6) context, and Plaintiff reserves the right to address the issue further when it is raised properly.

the Non-Disclosure Agreement, the Non-Disclosure Agreement's forum selection clause does not apply."); *PFZ Props., Inc. v. Dep't of Nat. & Env't Res.*, No. 08-cv-1379, 2008 WL 11503811, at *3-4 (D.P.R. Nov. 20, 2008) (declining to dismiss "[p]laintiff's complaint on the grounds of the choice of law provision contained in the Agreement" because plaintiff's claims were based on constitutional violations and "d[id] not arise under the Agreement" despite defendant's attempt "to veil the instant dispute" as such).

The forum selection clause at issue here states that "OCIF will retain exclusive jurisdiction ***as allowed by law*** to address any future controversies arising from or in connection with the Receivership Documents." Settlement Agreement § 11(c). OCIF's jurisdiction is limited by the bounds of what the law allows, and the law does not allow it to decide matters related to a shareholders' rights—at least not in exclusive capacity. *See* P.R. Laws Ann. tit. 7, § 2007 (2013); *see also id.* tit. 14, §§ 3563, 3564, 3567, 3650 (2009).

OCIF is an administrative agency of the Commonwealth of Puerto Rico and part of the executive branch of Puerto Rico's government. *See id.* tit. 7, § 2001 (1985). As an administrative agency, OCIF can only exercise the powers delegated to it through statute,[5] and no contractual agreement with OCIF can override such a constitutional precept. *See id.* § 2003 (1999); *id.* § 2007 (2013); *see also City of Arlington v. F.C.C.*, 569 U.S. 290, 291 (2013) (concluding agency actions beyond delegated powers are ultra vires); *Lyng v. Payne*, 476 U.S. 926, 937 (1986) (finding agency actions cannot exceed delegated powers); *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992) ("Agency actions beyond delegated authority are '*ultra vires*,' and courts must invalidate them."). Pursuant to OCIF's charter, OCIF has the power to administer

---

[5] These delegated powers include the authority to "handle, investigate and resolve the complaints presented to the [Financial] Board or to the Commissioner's Office." P.R. Laws Ann. tit. 7 § 2010(a)(3) (2003). Section 2013 further clarifies that a complaint filed with OCIF is a complaint to "vindicate the rights granted to the citizens by the laws administered thereby." *Id.* tit. 7 § 2013 (1985).

many statutes related to financial institutions in Puerto Rico. P.R. Laws Ann. tit. 7, § 2007 (2013). Critically here, the Puerto Rico General Corporations Law of 2009—which governs the rights of shareholders—is not one of them. *See id.*; *see also* P.R. Laws Ann. tit. 14, §§ 3563, 3564, 3567, 3650 (2009). Therefore, the forum selection clause cannot be applied so as to fully deprive this Court of jurisdiction over the issues raised by the Complaint because such application would not be "allowed by law." But even if the clause could be applied, it would be futile to do so here— where OCIF appointed Defendant as Receiver to the Bank and, in fact, brings Defendant 90% of its business—because it would deprive Plaintiff of its right to a neutral and unbiased adjudicator. *See Ryan Marin: Navigating Questions of Professionalism Amid Puerto Rico's Banking Crisis*, THE RICAN REV. (Nov. 2023), https://thericanreview.com/business/ryan-marin-navigating-questions-of-professionalism-amid-puerto-rico-banking-crisis. Accordingly, this Court cannot enforce the forum selection clause and should disregard its application to this case.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and Alternative Motion to Transfer Venue.[6]


Dated: November 27, 2023             Respectfully submitted,

                                     **WINSTON & STRAWN LLP**

                                     */s/ Elizabeth Ireland*
                                     Elizabeth Ireland
                                     N.C. Bar No. 47059
                                     300 South Tryon Street, 16th Floor
                                     Charlotte, NC 28202
                                     Tel.: (704) 350-7700
                                     Fax: (704) 350-7800
                                     eireland@winston.com

---

[6] Should the Court for any reason decide to dismiss this case, Plaintiff requests dismissal without prejudice so it may amend.

Abbe David Lowell
D.C. Bar No. 358651
1901 L Street, NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
abbelowellpublicoutreach@winston.com

Richard Weber
N.Y. Bar No. 2465094
200 Park Avenue
New York, NY 10166-4193
Tel.: (212) 294-1718
Fax: (212) 294-4700
rweber@winston.com

*Attorneys for Plaintiff*
*Bancrédito Holding Corporation*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document complies with the applicable page and word limitations set forth in Local Civil Rule 7.2(f)(1)-(3). The number of words in the memorandum is 7,284, inclusive of footnotes, but exclusive of the case caption, signature block, required certificates, table of contents, table of authorities, and exhibit.

*/s/ Elizabeth Ireland*
Elizabeth Ireland

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 27, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court via the Court's E-Filing Portal. I also certify that the foregoing document is being served on all counsel of record by email generated by the E-Portal system.

*/s/ Elizabeth Ireland*
Elizabeth Ireland